293 N.J. Super. 99 (1996)
679 A.2d 718
GENERAL MOTORS CORPORATION, PLAINTIFF-APPELLANT,[1]
v.
CITY OF LINDEN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 4, 1996.
Decided July 26, 1996.
*100 Before Judges PRESSLER, WEFING and KOLE.
Seth I. Davenport argued the cause for appellant (Garippa & Davenport, attorneys; Mr. Davenport, John E. Garippa and Philip J. Giannuario, of counsel and on the brief).
Robert F. Giancaterino argued the cause for respondent (Skoloff & Wolfe, attorneys; Saul A. Wolfe and Mr. Giancaterino, of counsel; Mr. Giancaterino, on the brief).
*101 Demetrice R. Miles, Assistant Corporation Counsel, argued the cause for intervenor-respondent City of Newark (Michelle Hollar-Gregory, Corporation Counsel, attorney; Mr. Miles, on the brief).
Gail L. Menyuk, Deputy Attorney General, argued the cause for intervenor-appellant State of New Jersey (Deborah T. Poritz, Attorney General, attorney; Michael J. Haas, Senior Deputy Attorney General, of counsel; Ms. Menyuk, on the brief).
Donald F. Miceli argued the cause for intervenor-appellant NBCP Urban Renewal Partnership (Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, attorneys; Mr. Miceli and Richard K. Matanle, on the brief).
John B. Hall argued the cause on behalf of amicus curiae New Jersey Chamber of Commerce, New Jersey Business and Industry Association, Chemical Industry Council, Independent Energy Producers of New Jersey, Association of Graphic Communication, Commerce and Industry Association of New Jersey, New Jersey Laborers'-Employers' Cooperation and Education Trust, National Association of Industrial and Office Properties, New Jersey Chapter and International Brotherhood of Electric Workers, Local Union No. 675 (McManimon & Scotland, attorneys; Mr. Hall, of counsel and on the brief with Peter Dickson).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Plaintiff General Motors Corporation (GM) and intervenor State of New Jersey appeal, on leave granted, from a partial summary judgment entered by the Tax Court declaring that N.J.S.A. 54:4-1(b), as amended by L. 1992, c. 24, § 3, in implementation of the Business Retention Act (BRA), N.J.S.A. 54:4-1.13 to -1.16, is unconstitutional as a violation of the uniformity requirement of art. VIII, § 1, ¶ 1 of the New Jersey Constitution. We disagree and reverse.
The procedural events leading to this appeal began with GM's filing of complaints in the Tax Court contesting the 1983, 1984, *102 and 1985 real property assessments by the City of Linden. The original complaints were tried in 1989, resulting in a reported decision, General Motors Corp. v. Linden, 12 N.J. Tax 24 (Tax Ct. 1991). GM appealed to this court from that judgment, and we reversed sub nom. GMC v. City of Linden, 13 N.J. Tax 324 (App.Div. 1993). The basis of our reversal and remand for virtually de novo reconsideration of the assessments was the occurrence of two significant developments while the appeal was pending. The first was the Supreme Court's decision in Ford Motor Co. v. Township of Edison, 127 N.J. 290, 604 A.2d 580 (1992), which had rejected the Tax Court's rationale, employed as well in the GM case, that an automobile assembly plant is a special-purpose property requiring assessment on the basis of its use. The other was the Legislature's adoption of the BRA, expressly made applicable to pending appeals by L. 1992, c. 24, § 7, and the implementing amendment of N.J.S.A. 54:4-1(b), which redefined "fixtures" for purposes of local taxability of business property. On remand, all GM's pending tax appeals, from 1983 to 1993, were consolidated. Linden then moved for partial summary judgment declaring the BRA and N.J.S.A. 54:4-1(b) unconstitutional. The State was accorded the opportunity to intervene pursuant to R. 4:28-4 and did so. The summary judgment motion was granted, and we then granted GM's motion, joined in by the State, for leave to appeal.
Some preliminary comment is in order. Analysis of the facial unconstitutionality argument asserted in the Tax Court by defendant City of Linden requires a careful review of the well-documented legislative history of the BRA, which represents the most recent effort by the Legislature to mediate between the economic interests of the industrial and manufacturing community of this State and the budgetary concerns of the municipalities, which must look increasingly to residential real estate as business and commercial ratables are reduced. It is, of course, immediately apparent that the crux of the problem is this State's extraordinary degree of reliance on the local property tax base as the source of financing governmental services. That tax base burdens *103 all owners of real property, homeowners no less than commercial owners, and the relief of one group is necessarily at the expense of the other. Nevertheless, this much is clear. The 1947 New Jersey Constitution mandates taxation of real property "under general laws and by uniform rules." N.J. Const. art. VIII, § 1, ¶ 1(a). See generally Switz v. Kingsley, 37 N.J. 566, 182 A.2d 841 (1962). The Legislature does, however, have "broad discretion in the classification of personal property for exemption or preferential treatment." Id. at 586, 182 A.2d 841 (emphasis added). Consequently, the legislative classification of personal property for tax purposes must be upheld "if any set of facts can reasonably be conceived to support it." Ibid. See also Zito v. Kingsley, 92 N.J. Super. 37, 222 A.2d 130 (App.Div. 1966).
The Legislature, at least since the 1966 enactment of the Business Personal Property Tax Act (BPPTA), N.J.S.A. 54:11A-1 to 21, repealed by L. 1993, c. 174, § 1, has acted consistently with its conviction that the State's economic health, at least in terms of the continued viability of its industrial and manufacturing sectors, requires the "creation of a fiscal climate in New Jersey that would be attractive to corporations and industry generally." City of Bayonne v. Port Jersey Corporation, 79 N.J. 367, 378, 399 A.2d 649 (1979). The basic mechanism by which the Legislature has sought to create this climate vis-a-vis the local tax burden has been by narrowly defining "fixtures" to the end that, to the extent practical and reasonable, business personal property to some degree affixed to the real property will maintain its original character as personal property for local taxation purposes. As most recently explained by the Legislature in N.J.S.A. 54:4-1.14:
The Legislature finds and declares that since 1979 New Jersey has lost a major share of its manufacturing jobs and manufacturing plants and this trend has persisted throughout periods of economic recovery and periods of recession. The Legislature also finds that New Jersey's manufacturing sector, notwithstanding the recent losses, continues to be an important source of relatively high-paying employment for a large portion of the work force and an essential foundation for the rest of the economy, serving as a larger multiplier of jobs in the economy than any other sector. The Legislature further finds that in order to retain manufacturing jobs it is in the interest of the business community, municipalities and the State of New Jersey to maintain a policy regarding the taxation of business personal *104 property which is historically consistent, equitable and competitive with neighboring states and which creates and maintains reasonable incentives for manufacturing interests to exist and thrive in New Jersey. The Legislature, therefore, declares that it is the policy of the State, through this act, to refine the definitions of real property and personal property in order to reaffirm the broad exclusion from local property taxes of business personal property used or held for use in business.
It is obviously not within the court's prerogative to address the wisdom of the Legislature's policy or its implementing allocation of the tax burden. Our sole inquiry is whether the Legislature's action offends the State Constitution. We conclude that it does not because the subject of its action is not real property, as to which the constitutional Uniformity Clause applies, but rather personal property, to which only the general equal protection test of reasonableness of classification applies.
A brief historical review suffices to make the reasons for our conclusion clear. First, as explained by City of Bayonne, supra, 79 N.J. at 378-380, 399 A.2d 649, the BPPTA sought to contribute to an attractive business climate by removing business personal property from municipal taxation altogether, eliminating disparate rates and other inequities, and subjecting that category of personal property to a system of state taxation. See further Report of the Governor's Committee on Local Property Taxation submitted December 15, 1965 (substantially relied on by Bayonne). The immediate question, of course, was how to define fixtures, since, obviously, the broader the definition, the more expansive would be the scope of business personal property nevertheless subject to municipal taxation as real estate. In order to accommodate the legislative purpose in having adopted the BPPTA, the Court in Bayonne enunciated the restrictive "material injury" test, rejecting the broader formulations applicable in other contexts.
During the ensuing years, the Legislature's delicate balance between business-community interests and the preservation of the municipal tax base was threatened by decisions of the Tax Court construing the material-injury test with extreme restrictiveness and, finally, so narrowly as to characterize large storage tanks as business personal property exempt from municipal taxation. Stem *105 Bros., Inc. v. Alexandria Tp., 6 N.J. Tax 537 (Tax Ct. 1984). The Legislature, after extensive discussions with business, industry, and municipal representatives, responded by enacting Chapter 117 of the Laws of 1986. See generally Legislative Survey, The Business Retention Act: An Act Concerning the Taxation of Certain Business Property, 18 Seton Hall Legis. J. 873 (1994). And see Statement Accompanying Assembly Amendments to S. 1858 (202d N.J.Leg., 1st Sess. 1986); Statement of Assembly Appropriations Committee to A. 2251 with Assembly Committee Amendments (202d N.J.Leg., 1st Sess. 1986).
Chapter 117, § 3, codified as N.J.S.A. 54:4-1.12, added to the BPPTA the express provision that storage tanks having a capacity in excess of 30,000 gallons were to be deemed real, not personal, property. The heart of Chapter 117, however, was the addition of a provision to N.J.S.A. 54:4-1 undertaking to define fixtures for purposes of local taxation, a definition declared by the Assembly Appropriations Committee in its Statement to A. 2251, supra, to be "a version of the `material injury' test" of Bayonne. Two tests were provided, denominated as (a) and (b). Personal property avoided the fixture, hence real property, classification if it met either test. The (a) test classified affixed personal property as retaining its personal property character if:
(1) The personal property so affixed can be removed or severed without material injury to the real property;
(2) The personal property so affixed can be removed or severed without material injury to the personal property itself; and
(3) The personal property so affixed is not ordinarily intended to be affixed permanently to real property....
The (b) test prescribed by Chapter 117 so classified affixed personal property if:
The personal property so affixed is machinery, apparatus, or equipment which is neither functionally essential to a structure the personal property is within or to which the personal property is affixed nor constitutes a structure itself.
Although, as noted, the Legislature's purpose was merely to give further substantive content to the material-injury test of Bayonne, the (b) test, because of some ambiguity in critical terms, particularly "functionally essential," and because of delay in adoption *106 of implementing regulations,[2] was construed in a manner patently antithetical to the legislative intent. In short, a series of Tax Court decisions created a distinction between general-purpose property and special-purpose property in applying the "functionally essential" standard, with the result that a variety of manufacturing facilities were assessed as special-purpose properties in which, for all practical taxation purposes, all the affixed personal property was taxed as real estate. See, e.g., Badische Corp. v. Town of Kearny, 11 N.J. Tax 385 (Tax Ct. 1990); Texas Eastern Transmission Corp. v. Dept. of the Treasury, Div. of Taxation, 11 N.J. Tax 198 (Tax Ct. 1990); Am. Hydro Power Partners v. Clifton, 11 N.J. Tax 12 (Tax Ct. 1990), aff'd in part, remanded in part, 12 N.J. Tax 264 (App.Div. 1991).[3]See also Legislative Survey, supra, at 883-884. And this despite the intervening adoption of a regulation, N.J.A.C. 18:12-10.1, defining "material injury" consistently with Bayonne and defining "functionally essential" as
necessary for the habitability of the structure, including, but not limited to, such items as air conditioning and heating equipment or apparatus, lighting and bathroom fixtures, elevators, escalators, electrical wiring, plumbing, etc.
It was to remedy what it regarded as the frustration of its purpose in having enacted the BPPTA and Chapter 117 that the Legislature, in 1992, adopted the BRA and, at the same time, amended the (b) test of N.J.S.A. 54:4-1. See Sponsor's Statement to S.332 (205th N.J.Leg., 1st Sess. 1992) and Senate Budget and Appropriations Committee Statement to S.332 (205th N.J.Leg., 1st Sess. 1992).
The 1992 version of the (b) test, declared unconstitutional by the Tax Court, provides, as an alternative to the (a) test, that affixed personal property retains its personal property character if it

*107 is machinery, apparatus, or equipment used or held for use in business and is neither a structure nor machinery, apparatus or equipment the primary purpose of which is to enable a structure to support, shelter, contain, enclose or house persons or property.
Moreover, the Senate Committee Statement to S.332, supra, makes clear that the concept of the primary purpose of "sheltering" is essentially the same as the habitability test of the 1988 regulatory definition of the replaced "functionally essential" standard of Chapter 117. Thus, the Statement specifically declares that machinery, apparatus or equipment meeting that primary purpose includes, illustratively, central heating and air conditioning systems, elevators, suspended ceilings, affixed partitions, plumbing and plumbing fixtures, overhead lighting, sprinkler systems, and piping and electrical wiring up to the point of connection.
From the foregoing, it is clear that the Legislature has had a single goal since 1966, namely, to accord the definition of fixtures the most restrictive scope consistent with general notions of the fundamental distinction between real and personal property, a process it has repeatedly been required to undertake since Bayonne by what it has deemed to be Tax Court recalcitrance. We repeat that the judiciary is not at liberty to override legislative policies with which it disagrees. The question only is whether the Legislature's definitional process withstands state constitutional scrutiny. We think it plain that the Legislature has the right, under the Constitution as interpreted by Switz, to classify personal property. And we are satisfied that that is all that the BRA and the 1992 version of the (b) test undertake to do. We do not think it is necessary to undertake an extensive analysis of the vagaries of the law of fixtures. As Bayonne explained, fixtures are a variable hybrid, meaning different things in different contexts. It may mean in this context what the Legislature says it means so long as its definition does no violence to the basic law of *108 real property, and we are satisfied that this one does not.[4] That is to say, wherever the line of acceptable definition of a fixture may ultimately lie, this definition, in our view, is on the acceptable side of it.
There is one further matter to be considered. Linden challenged not only the constitutionality of the BRA but also its applicability to pending tax appeals. The Tax Court did not consider the issue. We are, however, satisfied that at least facially, the provision is entirely valid, particularly in view of the progressive staging of the relief to the taxpayer provided for by N.J.S.A. 54:4-1.16. See Chevron U.S.A., Inc. v. Perth Amboy, 9 N.J. Tax 205 (Tax Ct. 1987). Moreover, it is difficult to see how the fiscal interests of the municipality are substantially prejudiced thereby in view of the fact that during the period of viability of the BPPTA, from 1966 to 1993, business personal property was not taxable by municipalities at all, and for a substantial part of that period and until the Tax Court's expansive reading of special purpose use, the restrictive material-injury test of Bayonne obtained. We do not, however, foreclose the opportunity of the municipality to attempt to show such substantial prejudice as would preclude the retroactive application of the BRA in accordance with the statutory scheme.
The partial summary judgment appealed from is reversed, and the matter is remanded to the Tax Court for review of the challenged assessments on their merits consistent with this opinion.
NOTES
[1] Two separate appeals are consolidated for purposes of this opinion.
[2] N.J.A.C. 18:12-10.1 was not, in fact, promulgated until November 1988.
[3] All three of these cases were cited in the Sponsor's Statement to S.332, infra, as illustrative of the Tax Court's failure to follow the legislative intent expressed both in the BPPTA and Chapter 117.
[4] Because we believe that only classifications doing violence to real property law are subject to scrutiny, we find no impediment to constitutionality, as did the Tax Court, in the Legislature's decision to continue, by N.J.S.A. 54:4-1, the real property classification of specified oil refinery property and telephone company property.