696 A.2d 683

GENERAL MOTORS CORPORATION, PLAINTIFF–RESPONDENT,
v. CITY OF LINDEN, DEFENDANT–APPELLANT.

Argued February 19, 1997—Decided July 21, 1997.

*Saul A. Wolfe* argued the cause for appellant *(Skoloff & Wolfe,* attorneys; *Mr. Wolfe, Robert F. Giancaterino* and *Elizabeth D. Abramson,* of counsel and on the briefs).

*Seth I. Davenport* argued the cause for respondent (*Garippa & Davenport,* attorneys; *Mr. Davenport, John E. Garippa* and *Phil-*

*ip J. Giannuario,* of counsel; *Mr. Davenport, Mr. Garippa, Mr. Giannuario* and *Kenneth R. Kosco,* on the briefs).

*Demetrice R. Miles,* Assistant Corporation Counsel, argued the cause for intervenor-respondent City of Newark *(Michelle Holler–Gregory,* Corporation Counsel, attorney).

*Gail L. Menyuk,* Deputy Attorney General, argued the cause for intervenor-respondent State of New Jersey *(Peter Verniero,* Attorney General of New Jersey; attorney *Joseph L. Yannotti,* Assistant Attorney General, of counsel).

*Donald F. Miceli* argued the cause for intervenor-respondent NBCP Urban Renewal Partnership *(Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein,* attorneys; *Mr. Miceli* and *Richard K. Matanle, II,* of counsel and on the brief).

*John B. Hall,* argued the cause for *amici curiae* New Jersey Chamber of Commerce, New Jersey Business and Industry Association, Chemical Industry Council, Independent Energy Producers of New Jersey, Association of Graphic Communication, Commerce and Industry Association of New Jersey, New Jersey Laborers–Employers' Cooperation and Education Trust, National Association of Industrial and Office Properties, New Jersey Chapter and International Brotherhood of Electric Workers, Local Union No. 675 *(McManimon & Scotland,* attorneys; *Mr. Hall* and *Peter Dickson,* on the briefs).

The opinion of the Court was delivered by

O'HERN, J.

In this case, we review again the ebb and flow of legislative and judicial efforts to distinguish between real and personal property for purposes of taxation. We last reviewed that distinction in *R.C. Maxwell Co. v. Galloway Township,* 145 *N.J.* 547, 679 *A.*2d 141 (1996). This appeal presents a facial challenge to the constitutionality of the Business Retention Act of 1992(BRA). *L.* 1992, *c.* 24, §§ 1 to 7. We find that the statute is facially constitutional because it may reasonably be interpreted as not to create an unconstitutional exemption for real property from taxation that would favor

business or industry. It is, rather, as the BRA's sponsors stated, an effort to "provide[ ] refinements in the definitions of real and personal property" for purposes of determining whether certain forms of property are subject to taxation. *Sponsor's Statement to S. 332* (205th N.J.Leg., 1st Sess.1992).

I

## FACTS AND PROCEDURAL HISTORY

The case concerns assessments of General Motors' automobile assembly plants made by the City of Linden for the 1983, 1984, and 1985 tax years. General Motors (GM) appealed the assessments on the basis that the Tax Court had incorrectly assessed the property as special purpose property rather than general purpose property. The Appellate Division remanded the case to the Tax Court for consideration in light of our opinion in *Ford Motor Co. v. Township of Edison*, 127 *N.J.* 290, 604 *A.2d* 580 (1992), and for consideration of whether the BRA applied to the case. 13 *N.J. Tax* 324 (App. Div. 1993). GM's remaining tax appeals, through the 1992 tax year, were consolidated on remand.

In an unreported opinion, the Tax Court held the BRA to be unconstitutional. GM appealed to the Appellate Division, which reversed the Tax Court and concluded that the BRA was constitutional. 293 *N.J.Super.* 99, 679 *A.2d* 718 (App.Div.1996). The court held that "because the subject of [the BRA] is not real property, as to which the Uniformity Clause applies, but rather personal property," the proper test was whether the BRA's classifications were reasonable. *Id.* at 104, 679 *A.2d* 718. The court reasoned that the Legislature can classify personal property and concluded that its goal through the BRA "to accord the definition of fixtures the most restrictive scope consistent with ... the fundamental distinction between real and personal property" did not violate the State Constitution. *Id.* at 107, 679 *A.2d* 718. Linden sought leave to appeal.

The Senate and General Assembly passed concurrent resolutions requesting the Court to expedite its consideration of the constitutionality of the BRA. Senate Committee Substitute for State Concurrent Resolution No. 57 (March 7, 1996). We granted leave to appeal. We permitted the State, the City of Newark, the New Jersey Chamber of Commerce, and NBCP Urban Renewal to intervene and to file briefs as *amici curiae.*

## II

### BACKGROUND TO THE CONTROVERSY

■ There are two benchmarks for our decision. One is that the Legislature has broad discretion "in the classification of personal property for exemption or preferential treatment." *Switz v. Kingsley,* 37 *N.J.* 566, 586, 182 *A.*2d 841 (1962). The Legislature is free to tax personal property in any way so long as the classifications are reasonable and the property is assessed under general laws and by uniform rules. The other is that the Uniformity Clause of the New Jersey Constitution places limits on the Legislature's ability to classify real property for purposes of taxation. The Uniformity Clause requires that all real property be "assessed and taxed ... according to the same standard of value ... [and] at the general tax rate of the taxing district in which the property is situated." *N.J. Const., art.* VIII, § 1, ¶ 1(a). The clause has been described as a compromise that barred discriminatory burdens on real property taxation, in order to protect the tax revenues of municipalities. *New Jersey State League of Municipalities v. Kimmelman,* 105 *N.J.* 422, 433, 522 *A.*2d 430 (1987).

■ Historically, both real and personal property were subject to local taxation. In 1966, however, the Legislature passed the Business Personal Property Tax Act. *N.J.S.A.* 54:11A–1 to –21 (repealed). That Act excluded from taxation at the local level business personal property and substituted a system of taxation at the state level. The Act defined business personal property as

"tangible goods and chattels used or held for use in any business" but did not include "goods and chattels so affixed to real property as to become part thereof and not to be severable or removable without material injury thereto." *N.J.S.A.* 54:11A–2(b)(2) (repealed). Such business personal property, except when "so affixed," was excluded from local taxation. Items so affixed, or "fixtures," were subject to local taxation as real property.[1]

In *Bayonne City v. Port Jersey Corp.*, 79 *N.J.* 367, 399 *A.*2d 649 (1979), this Court interpreted *N.J.S.A.* 54:11A–2(b)(2) in the context of three extremely large, movable cranes. The *Bayonne* Court adopted a "material injury" test to determine whether the items were business personal property. The Court interpreted the exclusion from the definition of business personal property in *N.J.S.A.* 54:11A–2(b)(2) to refer to "only those chattels the removal of which will do irreparable or serious physical injury or damage" to the property. *Bayonne, supra,* 79 *N.J.* at 378, 399 *A.*2d 649. *Bayonne* rejected the so-called "institutional doctrine," which focused on whether the removal of a fixture would prevent the realty from being used for its original intended purpose.[2] *Id.* at 376, 399 *A.*2d 649; *see also H.J. Bradley, Inc. v. Taxation Div. Director,* 4 *N.J. Tax* 213, 219–20 (Tax 1982) (discussing institutional doctrine and its rejection).

---

[1] Generally, a fixture is an item of property that "has been so annexed to the realty that it is regarded as part and parcel of the land." *Lehmann v. Keller,* 454 *Pa.Super.* 42, 684 *A.*2d 618, 621 (1996).

[2] *Bayonne* relied on the adoption of the Uniform Commercial Code in 1961 to support its holding that the institutional doctrine had been rejected. UCC § 9–313, codified at *N.J.S.A.* 12A:9–313, which concerns priority of security interests in fixtures, was thought to have abolished the doctrine, five years before the adoption of the Business Personal Property Tax Act. *Id.* at 376–77, 399 *A.*2d 649. That interpretation of the UCC's effect on the institutional doctrine, however, has been called into question. *See McCalla v. Harnischfeger Corp.,* 215 *N.J.Super.* 160, 166 n. 4, 521 *A.*2d 851 (App.Div.), *certif. denied,* 108 *N.J.* 219, 528 *A.*2d 36, 37 (1987); *see also The Uniform Commercial Code and the Law of Fixtures,* 86 *N.J.L.J.* 61, 65 (1963).

Cases following *Bayonne* questioned the extent of its holding. Some cases gave the "material injury" test sweeping effect, and exempted from taxation many items (such as radiators, toilets, and sinks) previously taxed as real property because they could be removed from the realty without irreparable or serious injury. Other Tax Court decisions, however, applied both the *Bayonne* "material injury" test and a traditional "fixtures" test, to find certain items to be real property. Several cases interpreted the "without material injury thereto" language of *N.J.S.A.* 54:11A–2(b)(2) as exempting items from local taxation when their removal would cause material injury neither to the real property nor the personal property itself. *See, e.g., Lawrence Assoc. v. Lawrence Township,* 5 *N.J. Tax* 481, 511–12 (Tax 1983).

When the differences remained unresolved, the Legislature responded. In 1986, it amended *N.J.S.A.* 54:11A–2(b)(2) and *N.J.S.A.* 54:4–1, which defined property subject to taxation. *See L.* 1986, *c.* 117. Specifically, Chapter 117 amended *N.J.S.A.* 54:4–1 and defined taxable real property to include personal property "affixed" to the real property, unless

   a. (1) The personal property so affixed can be removed or severed without material injury to the real property;

   (2) The personal property so affixed can be removed or severed without material injury to the personal property itself; and

   (3) The personal property so affixed is not ordinarily intended to be affixed permanently to real property;

   or

   b. The personal property so affixed is machinery, apparatus, or equipment which is neither functionally essential to a structure the personal property is within or to which the personal property is affixed nor constitutes a structure itself.[3]

Chapter 117 further amended *N.J.S.A.* 54:11A–2 to exclude from the definition of business personal property goods and chattels taxable as real property pursuant to the amended *N.J.S.A.* 54:4–1.

---

[3] The phrase "machinery, apparatus, or equipment" has an antecedent in the Public Utilities Tax Law, *L.* 1940, *c.* 5, codified at *N.J.S.A.* 54:30A–49. That law excluded the "machinery, apparatus and equipment" of a regulated public utility from the definition of "real estate." *N.J.S.A.* 54:30A–50(b).

Chapter 117 deleted the former *N.J.S.A.* 54:11A–2(b)(2). It added *N.J.S.A.* 54:4–1.12 to define storage tanks of more than 30,000 gallons as real property.

The statements that accompanied Chapter 117 and the Governor's objections and recommendations to the Senate explained that the Legislature was reacting to post-*Bayonne* case law. Both the Governor and Legislature believed that municipalities were facing an immediate revenue deficit from the loss of tax ratables. Items traditionally thought to be taxed as real property were being exempted from taxation because almost any property affixed to realty could be removed without irreparable or serious injury. The Governor's objections and recommendations for amendment, which related only to aspects of the bill that dealt with taxation of storage tanks, stated in part: "This bill is a response to certain recent court decisions that may result in the exemption from local property taxation of certain industrial property that has long been taxed locally." *Governor's Reconsideration and Recommendation Statement to Senate Bill No. 1858* at 1 (Sept. 5, 1986). *See, e.g., Stem Bros., Inc. v. Alexandria Township,* 6 *N.J. Tax* 537 (Tax 1984) (finding large storage tanks business personal property). The Assembly statement attached to the floor amendment observed:

> The statutory test will clarify that personal property, once fixed to real property, becomes taxable as real property if the personal property is of a type or class which ordinarily remains with the real property for the period of its useful life. Thus, items such as toilets, sinks, water fountains and built-in lighting fixtures will be taxed as real property.
>
> However, machinery, apparatus and equipment used in business, even if affixed to real property, will not be subject to local property taxation under the definition because that property is not functionally essential to a structure or is not a type or class of property which is ordinarily intended to be affixed permanently to real property. Basically, such property is ordinarily moved when a business relocates, is frequently bought and sold separate from the real property and would not ordinarily be included in a deed of sale for the real property. The test excludes such property from real property taxation.
>
> [Assembly Appropriations Committee, *Statement to Assembly Bill No.* 2251 (June 23, 1986).]

Chapter 117, therefore, established the a and b tests and created a framework for determining when an item of business personal

property becomes real property for purposes of taxation. It has been described as establishing a presumption that "personal property affixed" is real property unless excluded under the subsections. *Freehold Township v. Javin Partnership,* 15 *N.J. Tax* 88, 94–95 (Tax 1995).

However, in interpreting Chapter 117, a number of cases created a distinction between "special purpose" and "general purpose" property. *See Texas Eastern Trans. Corp. v. Department of Treasury, Div. of Taxation,* 11 *N.J.Tax* 198 (Tax 1990). Special purpose property has unique physical design, special construction materials, or layout that restricts its utility to the use for which it was built. *Id.* at 209 n. 2. In *Texas Eastern,* the court concluded that regulations of the Division of Taxation, which were meant to clarify the terms "structure," "material injury," and "machinery, apparatus or equipment" in Chapter 117, were not reasonably related to special purpose property. *Id.* at 209–10. *Texas Eastern* was viewed as having restored the institutional doctrine because the decision stated that if real estate is special purpose property, "the operation of the structure and the operation of the business conducted therein merge." *Id.* at 211. The court had reasoned that the Legislature's intent in enacting Chapter 117 was to broaden the meaning of real property and narrow that of personal property. *Ibid.*

In response to *Texas Eastern*'s understanding of Chapter 117, the pendulum began to shift toward including business personal property as taxable real property. The Legislature expressed concern with three decisions referred to in our opinion in *R.C. Maxwell, supra,* 145 *N.J.* at 563, 679 *A.*2d 141. *See American Hydro Power Partners v. Clifton,* 11 *N.J.Tax* 12 (Tax 1990) (holding hydroelectric power machinery real property), *aff'd in part,* 12 *N.J. Tax* 264 (App.Div.1991); *Badische Corp. v. Town of Kearny,* 11 *N.J.Tax* 385 (Tax 1990) (holding batch ester plant machinery real property); *Texas Eastern, supra,* 11 *N.J. Tax* 198 (holding natural gas plant machinery real property).

The BRA was the Legislature's response. The BRA sought more broadly to exclude personal property used or held for use in business from local real property taxes. The BRA amended the subsection b machinery, apparatus, or equipment exemption to its current form. *R.C. Maxwell, supra,* 145 *N.J.* at 562, 679 *A.*2d 141. The BRA modified the b test of Chapter 117 by defining as real property all business personal property affixed unless the personal property affixed

> is machinery, apparatus, or equipment used or held for use in business and is neither a structure nor machinery, apparatus or equipment the primary purpose of which is to enable a structure to support, shelter, contain, enclose or house persons or property. For purposes of this subsection, real property shall include pipe racks, and piping and electrical wiring up to the point of connections with the machinery, apparatus, or equipment of a production process as defined in this section.

> [*N.J.S.A.* 54:4–1b.]

The legislative statement explained:

> [T]he bill amends subsection b. of *R.S.* 54:4–1 to specify that items of machinery, apparatus or equipment used in the conduct of a business are defined as personal property regardless of the class or type of real property to which such items may be affixed. Such items are defined as locally taxable real property only if they constitute a structure, as defined in the bill, or are primarily used to enable a structure to support, shelter, contain, enclose or house persons or property.

> [Senate Budget and Appropriations Committee, *Statement to Senate Bill No. 332* (February 24, 1992).]

In a new section, the Legislature defined "machinery, apparatus or equipment" as "any machine, device, mechanism, instrument, tool, tank or item of tangible personal property used or held for use in business." *N.J.S.A.* 54:4–1.15.

In *R.C. Maxwell,* we said that "the broader exclusion from local taxation [in the BRA] was an essential element to the Legislature's goal of reaffirming its policy to exclude 'machinery, apparatus and equipment used or held for use in business from local taxation.'" 145 *N.J.* at 562, 679 *A.*2d 141. Applying the principle of *ejusdem generis, Maxwell* construed "[any] item of tangible personal property used or held for use in business" to mean those items similar to "machinery, apparatus, or equipment" used in manufacturing operations. *Id.* at 565–66, 679 *A.*2d 141.

With the BRA, the Legislature continued to clarify its intent to distinguish between property integrated with the business, and property integrated with the realty upon which the business is located. The Governor's Statement to the Senate concerning the BRA confirms this understanding. The Statement declares that the BRA was intended to restore Chapter 117's distinction between business machinery that participates in the business, and business machinery that accommodates the business. The former was business personal property, the latter taxable as real property. *Governor's Reconsideration and Recommendation Statement to Senate Bill No. 332* at 2 (June 1, 1992). An example given of the distinction was of an air conditioning unit that dries the paint of new cars as they leave the assembly area and one that cools an office suite.

## III

### A.

#### THE STANDARD OF REVIEW

Of necessity, in the context of a facial challenge, we cannot fill in all the details but must sketch the outline of the law with a broad brush. As with all legislation, the BRA proceeds with a presumption of constitutionality. *In re C.V.S. Pharm. Wayne*, 116 *N.J.* 490, 561 *A.*2d 1160 (1989), *cert. denied*, 493 *U.S.* 1045, 110 *S.Ct.* 841, 107 *L. Ed.*2d 836 (1990); *Hills Dev. Co. v. Township of Bernards*, 103 *N.J.* 1, 510 *A.*2d 621 (1986). The Court will invalidate a statute only if it is clearly repugnant to the Constitution. *Newark Superior Officers Ass'n v. City of Newark*, 98 *N.J.* 212, 486 *A.*2d 305 (1985); *Paul Kimball Hosp., Inc. v. Brick Township Hosp.*, 86 *N.J.* 429, 432 *A.*2d 36 (1981). A taxing statute is not facially unconstitutional if it operates constitutionally in some instances. *J.L. Muscarelle, Inc. v. Saddle Brook Township*, 14 *N.J. Tax* 453, 473 (Tax 1995) (Hamill, J.T.C., concurring).

Linden disputes the characterization of this appeal, pointing to facts developed in the record that allegedly support its argument.

These facts, however, are formally not part of our appeal and we thus do not consider them.

## B.

## THE CONSTITUTIONAL UNDERSTANDING OF REAL PROPERTY

To argue, as the proponents of the BRA do, that the Act does no more than classify personal property assumes the answer to the question of what is real property. If every accession to land were viewed in its original state, the Legislature could as easily provide that the bricks and mortar that go into the making of an industrial plant should be classified as personal property. The reasoning of the BRA's proponents would have provided a simple answer to the problem posed by *Kimmelman, supra,* 105 *N.J.* 422, 522 *A.*2d 430. The Legislature might have stated that newly-constructed dwellings that remain unoccupied should be classified as exempt business personal property. Of course, the Legislature did not and would not do such a thing because there is a common assumption that some accessions of personal property to land are indisputably real property.

Because the Legislature does not have unbounded power to determine when property shall be considered realty or personalty, we therefore must ask what is real property or, more specifically, what would the framers of the 1947 Constitution have understood real property to be.

Our review of the subject is not intended to be a treatise on the law of real property (we have a sense that we are tiptoeing in a legal mine field), but is intended only to help us in the facial analysis of the BRA. The distinction between real and personal property has its roots in the Roman law of *accessio* and comes to the United States through the intermediary of centuries of English property law. *See* 5 *American Law of Property* § 19.1 (A. Casner ed.1952). A concise expression of the probable understanding of the concept of real property in 1947 is contained in

*Handler v. Horns*, 2 *N.J.* 18, 65 *A.*2d 523 (1949). Several members of that Court had participated in the Constitutional Convention of 1947. *See Lyn–Anna Properties, Ltd. v. Harborview Dev. Corp.*, 145 *N.J.* 313, 323, 678 *A.*2d 683 (1996). They wrote:

> It is an ancient maxim, which in the language of antiquity is expressed *quicquid plantatur solo, solo cedit*, that whatsoever is fixed to the realty is thereby made a part of the realty to which it adheres, and partakes of all of its incidents and properties.... But through the advancing years that old maxim has given way to numerous exceptions.
>
> [*Handler, supra*, 2 *N.J.* at 23–24, 65 *A.*2d 523.]

One significant exception to the ancient maxim concerned articles of trade or business ("trade fixtures") annexed to property by a tenant. That exception was rooted in reasons of policy (to encourage trade and industry) and reasons of logic (the tenant's motive in placing the articles on the property was presumably for the tenant's own benefit and not that of the landlord). *Id.* at 24, 65 *A.*2d 523.

New Jersey courts long had applied a three-part test to determine when chattels become fixtures. This test was first set forth by a New Jersey court in *Brearley v. Cox*, 24 *N.J.L.* 287 (Sup.Ct. 1854). That Court held that

> the true criterion of a fixture is the united application of the following requisites: (1) actual annexation to the realty, or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the *intention* to ... make a permanent accession to the freehold.
>
> [*Id.* at 289.]

*Feder v. Van Winkle*, 53 *N.J. Eq.* 370, 33 *A.* 399 (E. & A. 1895), established the institutional doctrine later disapproved in *Bayonne*. The *Feder* Court interpreted the *Brearley* test and concluded that "[t]he intention must exist to incorporate the chattels with the real estate for the uses to which the real estate is appropriated, and there must be the presence of such facts [that rebut] the inference that it is intended to be a temporary annexation." *Id.* at 373, 33 *A.* 399. *Feder* also held that each case must be determined according to its particular facts and circumstances. *Id.* at 372, 33 *A.* 399.

*Fahmie v. Nyman,* 70 *N.J.Super.* 313, 175 *A.*2d 438 (App.Div. 1961), observed, however, that *Feder* had emphasized the presence .of the element of intention that "impel[led] the conclusion that the chattels . . . [were] permanently essential" to the structure and so were real property. *Id.* at 318, 175 *A.*2d 438. *Fahmie* thus found that the institutional doctrine of *Feder* did not apply under its facts because the chattels were easily removable from the building (a butcher shop), and the "empty store would have been entirely suitable to the operation of any number of retail business enterprises." *Id.* at 321, 175 *A.*2d 438. *Fahmie* recognized a distinction between business property "essential" to the realty, and business property readily removable that did not damage the realty for future purchasers.

The institutional doctrine reached its apogee during the nineteen-thirties, first in the areas of relations between debtor and creditor and later in those between landlord and tenant. *See, e.g., Smyth Sales Corp. v. Norfolk B. & L. Ass'n,* 116 *N.J.L.* 293, 184 *A.* 204 (E. & A.1936). The doctrine has been described as a "humanitarian gesture" on the part of New Jersey to ameliorate the rigors of harsh economic periods. *See* 2 Grant Gilmore, *Security Interests in Personal Property* § 28.6 (1965).

The three-part *Brearley* test was essentially a restatement of the prevailing American common-law fixtures test, composed of the elements of affixation, adaptation, and intention. *See generally* Alphonse M. Squillante, *The Law of Fixtures: Common Law and the Uniform Commercial Code,* 15 *Hofstra L.Rev.* 191 (1987). *Teaff v. Hewitt,* 1 *Ohio St.* 511 (1853), remains the leading case. *Teaff* noted that different understandings of the law of fixtures had arisen in the case of business property. "The business of manufacturing . . . is a pursuit personal in its character and not strictly subservient to real estate, or essential to the enjoyment of the freehold." *Id.* at 535. The court reasoned that real and personal property could be united for some business purpose without each losing their particular character. *Ibid. Teaff* distin-

guishes between chattels devoted to the business conducted on the premises from fixtures devoted primarily to the realty itself.

The institutional doctrine, in contrast, molded the last two elements (adaptation and intention) in light of the economic understanding of the time. Squillante, *supra*, 15 *Hofstra L.Rev.* at 204. Its effect was to integrate the business personal property into the use of the realty and to treat them as a single economic unit ("the institution"). *Hall v. Luby Corp.*, 232 *N.J.Super.* 337, 346, 556 A.2d 1317 (Law Div.1989).

Despite several evolutions in its attempt to draw the lines between realty and personalty, we are satisfied that the Legislature has intended to be faithful to the common-law recognition that there are certain forms of personal property so affixed to real property as to be considered a part thereof. It enacted Chapter 117 and, later, the BRA to give verbal form to its understanding.

## IV

## DOES THE BRA GRANT AN UNCONSTITUTIONAL EXEMPTION IN FAVOR OF "REAL PROPERTY" USED IN BUSINESS?

### A.

Although the syntax of the statute suggests an intent to grant an exemption for real property used in business, we believe the Legislature did not intend that the b test override the a test in circumstances in which affixed personal property would otherwise be taxable as real property under the a test. That is to say, the a and b tests do not present entirely separate hurdles to surmount before an item of personal property is taxable as real property. Chapter 117 attempted to describe two classes of personal property that, although affixed, do not become real property for purposes of real property taxation.

There is first a general class of affixed personal property, with characteristics of severability without material injury (to either

itself or the realty) and the absence of an intention that it remain part of the realty. A second, more specific class of personal property consists of affixed personal property that is "machinery, apparatus, or equipment" used or held for use in business. The characteristics of this class may overlap the elements of severability and absence of an intention that it remain part of the realty that are found in the a test.

The legislative reasoning contained in the Assembly Committee Statement sustains the conclusion that the b test was not designed to override the a test for the benefit of business interests. Items like the air conditioner on the production floor that would constitute "machinery, apparatus, or equipment" under *Maxwell* generally would also pass the material injury and intent parts of the a test. The converse is also true. The Statement noted that business personal property is ordinarily moved upon relocation of the business, is bought and sold separately, and not ordinarily included in the deed of sale of the property. A draft proposed by the Division of Taxation stated that if such items can also be removed without material injury to themselves or to the real property, they are not subject to taxation as real property.

The one constant in the evolution of the legislation has been the intent that property traditionally taxed as real property should remain so. As originally introduced, *S.* 1858, the Senate bill that became Chapter 117, covered only the taxation of 10,000 gallon tanks (later increased to 30,000). A Senate Committee amendment to *S.* 1858 proposed the restoration of the traditional three-part fixtures test, which was to become the a test. However, later amendments replaced the traditional language of affixation, adaptation, and intent with a modified fixtures test. The statement that accompanied the amended test was as follows: "[the bill] adopts a version of the 'material injury' test as a means of determining whether or not personal property shall be taxed as real property." Assembly Appropriations Committee, *Statement to Assembly Bill No. 2251* (May 22, 1986). Despite the fact that the Legislature deleted from Chapter 117 the familiar common-

law language, the concepts that it employed are similar and related. Materiality of injury, for example, had long been a measure of affixation. Squillante, *supra*, 15 *Hofstra L.Rev.* at 204–05. The b test was added as a floor amendment. The statement included with the b test noted that the amendments "establish a new test which broadens that court definition" of real property.[4] Although perhaps inartfully done, the legislative drafting suggests that Chapter 117 was intended to insure against the resurrection of the institutional doctrine and to restore intent as an element in determining when affixed personal property becomes real property. We acknowledge that the legislative history is extensive and in places convoluted, but we are confident that the Legislature will clarify its meaning if we have misread it.

## B.

Lawmakers and jurists perceive abstract concepts in concrete terms. In attempting to draw the line at which business personal property serves the business or the property itself, the Legislature has used the model of the production line. Electrical wire embedded in the floor would be classified as real property. Once the wire reaches the line itself, it is classified as business personal property. *N.J.S.A.* 54:4–1b. Of course, the assembly line model may be an imprecise analog in the modern business setting. The California Supreme Court recently had to apply the concepts of real and personal property to electronic data processing equipment. *Crocker Nat'l Bank v. San Francisco*, 49 *Cal.*3d 881, 264

---

4 General Motors acknowledges in its brief that the statute should not be read literally and contends that application of the *Bayonne* test determines in the first instance, prior to applying the BRA, whether an item is real or personal property. Such an interpretation would make redundant the first two steps of the a test. We note that GM's "flowchart" of the BRA, attached as an exhibit to its brief to this Court, is therefore incorrect. *Amicus* NBCP has a more persuasive interpretation of the text of *N.J.S.A.* 54:4–1, noting that the "personal property affixed" language does not, as GM contends, require a predicate *Bayonne* analysis, but merely incorporates "affixation" as the first part of the traditional *Brearley* analysis.

*Cal.Rptr.* 139, 782 *P.*2d 278 (1990). The California court recognized that the legal problem confronting it was to develop a "workable rule" that would enable the tax assessor to operate most efficiently. *Id.* 264 *Cal.Rptr.* at 141, 782 *P.*2d at 280. We envision the BRA as attempting to develop workable rules that will enable taxpayers and tax assessors to operate most efficiently.

The Court inquired of the parties at oral argument about examples of how the statute might adversely affect the tax base of municipalities. The parties were able to offer no concrete examples that convinced us that the statute would be applied in an unconstitutional manner. Reference to the decision in *Emmis Broadcasting Corp. v. East Rutherford,* 14 *N.J. Tax* 524 (Tax 1995), *aff'd,* 16 *N.J. Tax* 29 (App.Div.), *certif. denied,* 147 *N.J.* 263, 686 *A.*2d 764 (1996), which held three radio broadcast towers to be business personal property, is a poor predicate for finding facial invalidity. That case was decided before *Maxwell* interpreted "machinery, apparatus, or equipment" and involved a special category of telecommunication property.

Although the Legislature has provided for a phasing-in of the statute in circumstances in which property previously taxed as real property would be reclassified as personal property, we were informed at oral argument that there have been no recorded incidents to that effect. The phase-in provision provides that if a taxpayer is entitled to an assessment reduction because the assessor was taxing as real property machinery, apparatus, or equipment excluded from taxation by the BRA, the municipality shall be entitled to assess and tax the property as personal property in decreasing amounts over five years. *N.J.S.A.* 54:4–1.16.

■ We find that the BRA is facially constitutional. It represents an effort by the Legislature to define a class of business personal property that would not have been considered real property under the common-law understanding of real property at the time of the 1947 Constitution. As Justice Holmes has said, words are the skin of ideas; the a and b tests of the BRA were meant to put skin on the complex ideas of property. *See Towne v.*

*Eisner,* 245 *U.S.* 418, 425, 38 *S.Ct.* 158, 159, 62 *L. Ed.* 372, 376 (1918).

Although the difficulty posed by the issues requires caution on our part in considering a facial challenge to the BRA, our decision does not foreclose future as applied challenges. The Legislature has attempted to devise workable rules for the assessment and taxation of property. Cases may arise, however, in which the constitutional distinction attempted to be drawn by the BRA may be crossed. We doubt that will occur. As we explained in *Maxwell* the phrase "machinery, apparatus, or equipment" does not have boundless meaning. The words must be construed consistently with the legislative intent in adopting the BRA. *R.C. Maxwell, supra,* 145 *N.J.* at 565-66, 679 *A.2d* 141. Determining the status for taxation of specific items is best left to the expertise of the assessment community and the Tax Court.

In view of the disposition we make, we do not decide the issue of the retroactive application of the BRA for the pre–1992 tax years. To determine whether a statute is to be given retroactive effect, this Court has applied a two-part test. *In re D.C.,* 146 *N.J.* 31, 50, 679 *A.2d* 634 (1996). The first part determines whether the Legislature meant to give the statute retroactive application, and the second part questions whether retroactive application would result in either a "manifest injustice" or an unconstitutional interference with "vested rights." *Ibid.* (citing *Phillips v. Curiale,* 128 *N.J.* 608, 617, 608 *A.2d* 895 (1992)). It is clear that the Legislature intended to give the BRA retroactive effect. We cannot find in this facial challenge that the BRA substantially changed the existing law of taxation of real property so as to result in a "manifest injustice" or an interference with "vested rights."

## V

### SUMMARY AND CONCLUSION

Although the attack in this case is upon the Business Retention Act of 1992, the basic framework for the taxation of the "machin-

ery, apparatus, or equipment" of business was established by Chapter 117 of the Laws of 1986. Governor Kean and the leaders of the Legislature envisioned that law as a benefit to municipalities, restoring the inroads on their tax base that had resulted from application of the one-dimensional "material injury" test of *Bayonne*. Chapter 117 was designed to insure that property that had "long been taxed locally" continued to be so taxed. The BRA of 1992 had a single purpose—to reverse the holding that Chapter 117 did not apply in the case of special purpose property. The BRA was intended, as Governor Florio's statement on signing explained, to "clearly express[ ] the Legislature's intent in 1986," and is consistent with long-standing State policy. . Subsequent interpretation of the BRA should be guided by those principles.

We affirm the judgment of the Appellate Division upholding the facial constitutionality of the BRA.

### APPENDIX [5]

A schematic of the concepts used by the Legislature over time to draw the line between real and personal property is as follows:

| | | |
|---|---|---|
| 1966 | No definition of real property | Definition of business personal property as "tangible goods and chattels" used in business, but excluding "goods and chattels so affixed to real property as to become part thereof and not to be severable or removable without material injury thereto." *N.J.S.A.* 54:11A–2 (repealed). |
| 1986 c. 117 | Definition of real property • Land  • Improvements | Same definition of business personal property, but excluding goods and chattels de- fined by N.J.S.A. 54:4–1 as |

---

[5] For purposes of this analysis, we have omitted certain specific delineations, as in the case of refineries, tanks, and telephone and telegraph equipment. *See N.J.S.A.* 54:4–1 (outlining treatment of such equipment).

thereon
◉ Personal property affixed to the real property unless

a. (1) The personal property so affixed can be removed or severed without material injury to the real property;

(2) The personal property so affixed can be removed or severed without material injury to the personal property itself; and

(3) The personal property so affixed is not ordinarily intended to be affixed permanently to real property; or

b. The personal property so affixed is machinery, apparatus, or equipment which is neither functionally essential to a structure the personal property is within or to which the personal property is affixed nor constitutes a structure itself. N.J.S.A. 54:4-1.

"real property." N.J.S.A. 54:11A-2.

| | | |
|---|---|---|
| 1992 BRA | Same definition of real property. Refined definitions of "machinery, apparatus, or equipment" as that "used or held for use in business and is neither a structure nor machinery, apparatus or equipment the primary purpose of which is to enable a structure to support, shelter, contain, enclose or house persons or property." N.J.S.A. 54:4–1. Expanded definition of "machinery, apparatus or equipment" in new section. N.J.S.A. 54:4–1.15. | Same definition of business personal property (BPPT was repealed in 1993). |

HANDLER, J., concurring.

The Court holds that the Business Retention Act of 1992 ("BRA") is facially constitutional "because it may reasonably be interpreted as not to create an unconstitutional exemption for real property from taxation that would favor business or industry." *Ante* at 524, 696 *A*.2d at 684. By that holding, the Court acknowledges its duty to construe legislative enactments in such a way as to preserve their constitutionality, if such an interpretation is reasonably possible. *See Brown v. City of Newark*, 113 *N.J.* 565, 582, 552 *A*.2d 125 (1989); *NYT Cable TV v. Homestead at Mansfield, Inc.*, 111 *N.J.* 21, 26, 543 *A*.2d 10 (1988). The Court fashions an interpretation of the BRA that allows it to be applied constitutionally. Indeed, if the BRA were not so construed, it is highly likely that its applications would violate the Constitution's Uniformity Clause. *See In re Kimber Petroleum Corp.*, 110 *N.J.*

69, 539 *A.*2d 1181, *appeal dismissed,* 488 *U.S.* 935, 109 *S.Ct.* 358, 102 *L.Ed.*2d 349 (1988).

The Legislature cannot define real and personal property in order to escape the purpose and intendment of the Uniformity Clause. The Court concludes that, in fact, the Legislature has not done so in enacting the BRA. The BRA's constitutionality is dependent on the fact that the Legislature's treatment of real property is fully consistent with the basic law of fixtures. That law serves to define the category of personal property that has become real property in the constitutional sense through its affixation to existing real property.

The Uniformity Clause to our Constitution states that:

Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, except as otherwise permitted herein and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district.

*[N.J. Const.* art. VIII, § 1, ¶ 1(a).]

Personal property that has become real property must be taxed as any other real property—"according to the same standard of value" and at the same tax rate.

"The evil that the [Uniformity Clause] sought to cure was the still-favorable [tax] treatment given to one industry, then the railroad industry." *League of Municipalities v. Kimmelman,* 105 *N.J.* 422, 436, 522 *A.*2d 430 (1987); *see also id.* at 427–36, 522 *A.*2d 430 (detailing the history surrounding the enactment of the Uniformity Clause). In order to prevent any one industry from receiving favorable treatment through the preferential taxation of its real property, the clause forbids the Legislature from granting exemption or preferential tax status to real property. The constitutional stricture applies to all real property, without regard to ownership or use. *E.g., Township of West Milford v. Van Decker,* 120 *N.J.* 354, 576 *A.*2d 881 (1990); *Kimmelman, supra,* 105 *N.J.* 422, 522 *A.*2d 430; *Switz v. Kingsley,* 37 *N.J.* 566, 182 *A.*2d 841 (1962).

The clause, however, does not bar the Legislature from according preferential tax treatment by classifying *personal property.* In *Switz, supra,* the Court noted that "[t]he mandate for sameness in standard of value and tax rate is limited to real property.... [I]t [is] clear the intent was to leave in the Legislature a broad power to classify personal property for either exemption or preferential treatment." 37 *N.J.* at 585, 182 *A.2d* 841; *see also General Electric v. City of Passaic,* 28 *N.J.* 499, 510, 147 *A.2d* 233 (1958) ("[The 1947 Constitution] seemingly contains nothing which would prohibit the Legislature from granting personal property tax exemptions by general legislation so long as there was proper basis and reasonable classification."). As a result of that dichotomy, the classification of property that straddles the divide between real and personal property becomes critical for purposes of valid taxation.

Prior to the enactment of the BRA, real property subject to the Uniformity Clause was described as all land and improvements thereon, including personal property affixed to real property or an appurtenance thereto, unless:

a. (1) The personal property so affixed can be removed or severed without material injury to the real property;

(2) The personal property so affixed can be removed or severed without material injury to the personal property itself; and

(3) The personal property so affixed is not ordinarily intended to be affixed permanently to real property; or

b. The personal property so affixed is machinery, apparatus, or equipment which is neither functionally essential to a structure the personal property is within or to which the personal property is affixed nor constitutes a structure itself.

[*N.J.S.A.* 54:4–1 (as amended by *L.* 1986, c. 117, § 1).]

Chapter 117 thus established the so-called "a" test (or "material injury" test) and the "b" test and created a framework for determining when an item of business personal property becomes real property for purposes of taxation.

The origins of this statutory test are rooted in the early common law of fixtures. *E.g., Brearley v. Cox,* 24 *N.J.L.* 287 (Sup.Ct.1854). Thus, as pointed out by the Court, items of personal property, including business personal property, when

they are " 'so affixed to real property as to become part thereof and not to be severable or removable without material injury thereto' " are " 'fixtures' " and "subject to local taxation as real property." *Ante* at 527, 696 A.2d at 685 (quoting *N.J.S.A.* 54:11A-2(b)(2) (repealed) and citing *Lehmann v. Keller,* 454 *Pa.Super.* 42, 684 *A.2d* 618, 621 (1996) (defining a fixture as "an item of property that 'has been so annexed to the realty that it is regarded as part and parcel of the land.' ")). A fixture has the attributes of both realty and personalty—it stands on the boundary dividing property into "things personal [and] ... things real." *Teaff v. Hewitt,* 1 *Ohio St.* 511, 527 (Ohio 1853); *cf. R.C. Maxwell Co. v. Galloway Twp.,* 145 *N.J.* 547, 554–56, 679 *A.2d* 141 (1996) (distinguishing between "improvements" and "personal property" affixed to real property).

If an item is transformed into a fixture, it is denoted real property for taxation purposes and is thus subject to the Uniformity Clause. It must be taxed according to the same standard of value and at the same rate as all other real property; it cannot be given different preferential treatment. If an item remains personalty, the item is not subject to the clause, and thus can be accorded favorable tax treatment under our constitutional scheme.

The BRA is an attempt to redefine real property. Although the statute left intact the two-part test, it modified the b test by defining as real property all business personal property affixed unless the personal property so affixed

is machinery, apparatus, or equipment used or held for use in business and is neither a structure nor machinery, apparatus or equipment the primary purpose of which is to enable a structure to support, shelter, contain, enclose or house persons or property. For purposes of this subsection, real property shall include pipe racks, and piping and electrical wiring up to the point of connections with the machinery, apparatus, or equipment of a production process as defined in this section.

[*N.J.S.A.* 54:4–1b.]

That modification of the b test was enacted as part of the BRA in an effort to lessen the burdens on industry by providing business machinery, equipment, and apparatus with a greater opportunity to be classified as personal property and thus more

lenient tax treatment. *R.C. Maxwell, supra,* 145 *N.J.* at 562, 679 *A.2d* 141. The Legislature found and declared

> that since 1979 New Jersey has lost a major share of its manufacturing jobs and manufacturing plants and this trend has persisted throughout periods of economic recovery and periods of recession.... The Legislature, therefore, declares that it is the policy of the State, through this act [the BRA], to refine the definitions of real and personal property in order to reaffirm the broad exclusion from local property taxes of business personal property used or held for use in business.
> [*N.J.S.A.* 54:4–1.14.]

The modification of the b test thus was intended to enlarge the class of business personal property not subject to uniform taxation applicable to other real property, thereby supporting and stimulating industrial growth.

Yet, however laudatory the goals of the BRA, the Legislature cannot ignore constitutional limits that constrain the meaning of personal property for tax purposes. If the Legislature were afforded a broad discretion unbounded by constitutional limits to define items as either fixtures (realty) or personalty, it could simply define all property it sought to treat favorably as personal property. *See ante* at 533, 696 A.2d at 688 ("If every accession to land were viewed in its original state, the Legislature could as easily provide that the brick and mortar that go into the making of an industrial plant should be classified as personal property."). Such a result would nullify the Uniformity Clause. Insistence that the Uniformity Clause be interpreted and applied strictly and consistently expresses its constitutional intendment and is evident by those cases in which legislative programs, certainly worthy in their goals, have run afoul of the clause's categorical bar on the disuniform treatment of real property. *See Van Decker, supra,* 120 *N.J.* 354, 576 *A.2d* 881 (invalidating local practice of reassessing value of real property only when property was sold); *Switz, supra,* 37 *N.J.* 566, 182 *A.2d* 841 (invalidating provision that provided preferential tax treatment to farmland in order to encourage the maintenance of open space).

The constitutional understanding of real property remains informed by the traditional law of fixtures. The fundamental issue presented by this litigation, therefore, is whether the Legislature

has impermissibly altered the law of fixtures in order to bypass the Uniformity Clause. In other words, we must determine whether the modified b test has the effect of narrowing the definition of real property and creating a new class of personal property. Because the law of fixtures provides the basic meaning that underlies the constitutional understanding of real property, the BRA would be invalid if it attempted to reconfigure the basic law of fixtures.

The BRA, as found by the Court, requires all property to pass the a test (or material-injury test) before being accorded personal-property status. The BRA does not, therefore, constitute an automatic unconstitutional recasting of the basic definition of property. *Ante* at 536, 696 A.2d at 690 ("Although the syntax of the statute suggests an intent to grant an exemption for real property used in business, we believe the Legislature did not intend that the b test override the a test in circumstances in which affixed personal property would otherwise be taxable as real property under the a test."). By reaffirming the traditional constitutional floor of the material-injury test, the Court reaffirms our consistent interpretation of the Uniformity Clause as a strict limit on legislative power that does not allow for legislative redefinition of "real property."

*Concurring in result*—Justice HANDLER—1.

*For affirmance*—Justices HANDLER POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—6.