KUSKIN, J.T.C.
In these matters plaintiffs appeal assessments of corporation business tax (“CBT”) imposed by defendant, Director of the New Jersey Division of Taxation (“Director”). The assessments resulted from the Director’s application of a statutory provision commonly referred to as the “Throwout Rule” in apportioning income of each plaintiff to New Jersey for tax purposes. The Throwout Rule is contained in N.J.S.A 54:10A-6(B), a section of the New Jersey Corporation Business Tax Act, N.J.S.A. 54:10A-1 to -41 (“CBT Act”). Plaintiffs’ respective appeals challenge the facial constitutionality of the Throwout Rule and its constitutionality as applied to each of them. Plaintiffs Federated Brands, Inc. and Whirlpool Properties, Inc. also contend that they are not subject to taxation in New Jersey. Each plaintiff has moved for summary *121 judgment declaring tlie Throwout Rule facially unconstitutional, and, in each appeal, the Director has cross-moved for partial summary judgment sustaining the facial constitutionality of the Rule. The appeals have been consolidated solely for purposes of addressing these motions.[1] For the reasons set forth below, I deny plaintiffs’ motions and grant the Director’s motions.
I. The Throwout Rule.
The Throwout Rule relates to the allocation factor [2] used by the Director for purposes of determining what portion of the income of a corporation, having regular places of business in New Jersey and outside of this State, is subject to taxation under the CBT Act.[3] The allocation factor has three components. N.J.S.A. 54:10A-6. One component is the “property fraction” which has, as its numerator, the average value all of the corporation’s real and tangible personal property located in New Jersey and, as its denominator, the average value of all of the corporation’s real *122 property and tangible personal property everywhere. N.J.S.A 54:10A-6(A). A second component is the “payroll fraction.” This fraction has, as its numerator, the total salaries, wages, and other compensation paid to the corporation’s officers and employees within New Jersey, and, as its denominator, the wages, salaries and other compensation paid to the corporation’s officers and employees wherever located. N.J.S.A. 54:10A-6(C). The last component of the allocation factor is the “sales fraction” which has, as its numerator, (i) the corporation’s receipts from sales of tangible personal property within New Jersey and from the rendering of services within this State, (ii) the corporation’s receipts from certain sales of tangible property shipped into New Jersey, (iii) rentals from property located within New Jersey and royalties from the use of patents or copyrights located in New Jersey, and (iv) any other business receipts that the corporation earned within this State. The denominator of the fraction is the total amount of the corporation’s receipts from everywhere. N.J.S.A. 54:10A-6(B). The property fraction, payroll fraction and twice the sales fraction, after being converted to percentages, are added together and divided by four to determine the corporation’s allocation factor. N.J.S.A 54:10A-6; N.J.A.C. 18:7-7.6.
The Throwout Rule, as enacted by L. 2002, c. 40, § 8, added the following language to the definition of the denominator used in calculating the sales fraction:
[I]f receipts would be assigned to a state, a possession or territory of the United States or the District of Columbia or to any foreign country in which the taxpayer is not subject to tax on or measured by profits or income, or business presence or business activity, then the receipts shall be excluded from the denominator of the sales fraction.
[N.J.S.A. 54:10A-6(B).]
The Legislature enacted this language to address its concern as to reduced corporation business tax receipts from multistate corporations taxable in New Jersey. The Assembly Budget Committee and Senate Budget and Appropriations Committee articulated this concern as follows:
Under the apportionment formula that is used for determining the portion of a corporation’s total taxable income that is taxable by New Jersey, the sales fraction is the most heavily weighted factor. The more goods that are shipped out of New Jersey, the lower this factor is [because, under N.J.S.A. 54:10A-6, goods shipped *123 out of New Jersey are deemed taxable in the destination slate and not in New Jersey].[4] Some of those sales are made in states where the corporation is not subject to tax because the corporation has no operations in those states. These sales are typically referred to as “nowhere sales” because they result in income being assigned so that it is taxed nowhere. The bill closes this loophole by “throwing out” the “nowhere sales” from the denominator of the sales fraction, which causes more of the income of the corporation to be assigned to states where the corporation actually has operations.
[Assembly Budget Committee Statement to A. 2501, p. 3 (June 27, 2002); Senate Budget and Appropriations Committee Statement to S. 1556, p. 3 (June 27, 2002).]
II. The Standard for Facial Unconstitutionality.
Plaintiffs, with the support of the amici curiae, contend that the Throwout Rule is facially unconstitutional because it violates the following provisions of the United States Constitution: the Due Process Clause, U.S. Const, amend. XIV, § 1; the Commerce Clause, U.S. Const, art. I, § 8, cl. 3; and the Supremacy Clause, U.S. Const, art. VI, cl. 2. In analyzing and evaluating these contentions, I am bound by the following principles enunciated by the New Jersey Supreme Court:
With respect to the standard for reviewing the constitutionality of State statutes, the Court will afford every possible presumption in favor of an act of the Legislature. Where alternative interpretations of a statute are equally plausible, the view sustaining the statute’s constitutionality is favored. Only a statute "clearly repugnant to the Constitution” will be declared void.
Further, in the field of taxation, the Court has accorded great deference to legislative judgments. The Court has recognized that absolute equality in taxation is a practical impossibility and that absolute mathematical precision is not required.
[ Town of Secaucus v. Hudson County Bd. of Taxation, 133 N.J. 482, 492-93, 628 A.2d 288 (1993) (citations omitted).]
In the context of challenges to the facial constitutionality of statutes relating to taxation, our Supreme Court has stated that “[a] taxing statute is not facially unconstitutional if it operates constitutionally in some instances.” General Motors Corp. v. City of Linden, 150 N.J. 522, 532, 696 A.2d 683 (1997) (citation omitted). Accord Wilde v. Wilde, 341 N.J. Super. 381, 395, 775 A.2d 535 (App.Div.2001). The source of this test for facial uneonstitu *124 tionality is the decision of the United States Supreme Court in United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). There, then Chief Justice Rehnquist stated that “[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.” Id. at 745, 107 S.Ct. at 2100, 95 L.Ed.2d at 707.
Plaintiffs Federated Brands and Whirlpool Properties assert that the United States Supreme Court has modified the Salerno standard so that a statute may be declared facially unconstitutional if it operates unconstitutionally in some instances, even if it operates constitutionally in others. In support of this assertion, these plaintiffs cite City of Chicago v. Morales, 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999). In Morales, Justice Stevens, a member of the majority in Salerno, stated that the Salerno articulation of the standard “has never been” the rule. Id. at 55, n. 22, 119 S.Ct. at 1859, n. 22, 144 L.Ed.2d at 79. However, Morales did not overrule Salerno. In his dissent in Morales, Justice Scalia cited a number of decisions preceding and succeeding Salerno in which the Salerno standard was adopted. Id. at 79-80, 119 S.Ct. at 1870-1871, 144 L.Ed.2d at 94-95 (Scalia, J., dissenting). He suggested that the Court had deviated from the standard only when confronting “hot button social issues,” namely, abortion rights and homosexual rights. Id. at 81, 119 S.Ct. at 1871, 144 L.Ed. 2d at 95.
I conclude that, even if in some limited circumstances the United States Supreme Court may have applied a standard somewhat different from that set forth in Salerno, the Salerno standard is applicable in a tax context. See General Motors Corp. v. Linden, supra, 150 N.J. at 532, 696 A.2d 683. This standard is consistent with the “great deference” accorded to legislative judgments in the field of taxation. Town of Secaucus v. Hudson County Bd. of Taxation, supra, 133 N.J. at 493, 628 A.2d 288.
III. The Due Process, Commerce, and Supremacy Clauses.
The Constitution does not impose a “single [apportionment] formula on the States.” Container Corp. of Am. v. Fran *125 chise Tax Bd., 463 U.S. 159, 164, 103 S.Ct. 2933, 2939, 77 L.Ed.2d 545, 552 (1983) (citation omitted). In Moorman Manufacturing Co. v. Bair, 437 U.S. 267, 274, 98 S.Ct. 2340, 2345, 57 L.Ed.2d 197, 205 (1978), the Court, in approving the use of a single-factor sales formula to apportion income, stated the “basic principle[ ] that the States have wide latitude in the selection of apportionment formulas.” If the formula employed by a state imposes tax on some income not properly sourced to that state, the formula is not automatically unconstitutional. The Constitution does not invalidate an apportionment formula “whenever it may result in taxation of some income that did not have its source in the taxing State----” Id. at 272, 98 S.Ct. at 2344, 57 L.Ed.2d at 204. Any formula, however must satisfy the requirements of the Due Process Clause and Commerce Clause.
Under the Due Process Clause, a statute imposing tax on income generated by the activities of a multistate corporation will be constitutional if “there is some minimal connection between [the corporation’s] activities and the taxing State” and the income taxed by the state is “rationally related to ‘values connected with the taxing State.’ ” Moorman Mfg. Co. v. Bair, supra, 437 U.S. at 273, 98 S.Ct. at 2344, 57 L.Ed.2d at 204 (quoting Norfolk & Western Ry. Co. v. Missouri State Tax Comm’n, 390 U.S. 317, 325, 88 S.Ct. 995, 1001, 19 L.Ed.2d 1201, 1207 (1968)). Accord, Mobil Oil Corp. v. Comm’r of Taxes, 445 U.S. 425, 436-37, 100 S.Ct. 1223, 1231, 63 L.Ed.2d 510, 520 (1980); Trinova Corp. v. Michigan Dep't of Treasury, 498 U.S. 358, 373, 111 S.Ct. 818, 828, 112 L.Ed.2d 884, 904 (1991); Quill Corp. v. North Dakota, 504 U.S. 298, 306, 112 S.Ct. 1904, 1909-1910, 119 L.Ed.2d 91, 102 (1992).
Under the Commerce Clause, a tax on the income of a multistate corporation will withstand a constitutional attack if the tax (1) “is applied to an activity with a substantial nexus with the taxing State,” (2) “is fairly apportioned,” (3) “does not discriminate against interstate commerce,” and (4) “is fairly related to the services provided by the State.” Complete Auto Transit Inc. v. Brady, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326, 331 *126 (1977). In order to determine whether tax is “fairly apportioned,” a court must investigate whether the imposition of the tax is “internally consistent” and “externally consistent.”
The first, and again obvious, component of fairness in an apportionment formula is what might he called internal consistency-thal is, the formula must be such that, if applied by every jurisdiction, it would result in no more than all of the unitary business’ income being taxed. The second and more difficult requirement is what might be called external consistency—the factor or factors used in the apportionment formula must actually reflect a reasonable sense of how income is generated.
[Container Corp. of Am. v. Franchise Tax Bd., supra, 463 U.S. at 169, 103 S.Ct. at 2942, 77 L.Ed.2d at 556.]
In Trinova Corporation v. Michigan Department of Treasury, supra, the Court explained that the Complete Auto four-factor test, although directed towards Commerce Clause concerns, incorporates requirements for constitutionality under the Due Process Clause.
The Complete Auto test, while responsive to Commerce Clause dictates, encompasses as well the Due Process Clause requirement that there be “a ‘minimal connection’ between the interstate activities and the taxing State, and a rational relationship between the income attributed to the State and the interstate values of the enterprise.”
[Trinova Corp. v. Michigan Dep’t of Treasury, supra, 498 U.S. at 373, 111 S.Ct. at 828, 112 L.Ed.2d at 904 (citations omitted).]
See also MeadWestvaco Corp. v. Illinois Dep’t of Revenue, supra, — U.S. at-, 128 S.Ct. at 1505,170 L.Ed.2d at 412 (“The broad inquiry subsumed in both [the Due Process Clause and Commerce Clause] requirements is whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state-that is, whether the state has given anything for which it can ask return.” (Citations and internal quotation marks omitted).). The Due Process and Commerce Clause tests, however, are not identical in that the “minimal connection” requirement under the Due Process Clause may not be sufficient to satisfy the “substantial nexus” requirement under the Commerce Clause. Quill Corp. v. North Dakota, supra, 504 U.S. at 313, 112 S.Ct. at 1913-14,119 L.Ed.2d at 107.
The Supremacy Clause declares that the laws of the United States are “the supreme law of the Land.” The New Jersey Supreme Court has summarized the decisional law under this Clause as follows:
*127 The tests for determining whether state laws are preempted by federal law are well-established:
Pre-emption may be either express or implied, and “is compelled whether Congress’ command is explicitly stated in the statute’s language or implicitly contained in its structure and purpose.” Absent explicit pre-emptive language, we have recognized at least two types of implied pre-emption: field pre-emption, where the scheme of federal regulation is “ ‘so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,’ ” and conflict preemption, where “compliance with both federal and state regulations is a physical impossibility,” or where state law “stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress!.]” Whether a state law stands as an obstacle to the accomplishment of a federal objective, requires a court to consider “the relationship between state and federal laws as they are interpreted and applied, not merely as they are written.”
Determining whether federal law preempts state law is a fact-sensitive endeavor, based on a court’s review of “fragments of statutory language, random statements in the legislative history, and the degree of detail of the federal regulation.”
[R.F. v. Abbott Labs., 162 N.J. 596, 618-19, 745 A.2d 1174 (2000) (citations omitted).]
IV. The Contentions of the Parties.
Each plaintiff and the amici argue that the Throwout Rule, in effect, enables New Jersey to tax income generated in a foreign state, but not taxable there, under circumstances where New Jersey facilities and activities have not contributed to the generation of the income. The foreign state income may not be taxable in that state, and thus subject to the Throwout Rule, either because the state does not impose a tax or because P.L. 86-272, codified as 15 U.S.C. § 381, prohibits taxation of the income in the state. In general, P.L. 86-272 bars a state from taxing income “derived within such State” if the taxpayer’s only business activity within the state is the solicitation of orders for the sale of tangible personal property where the orders are sent outside the state for acceptance or rejection and the tangible personal property ordered is shipped or delivered from a point outside the state.
In support of their contention that the Throwout Rule enables New Jersey to tax income wholly unrelated to this State, plaintiffs and the amici posit an example of a corporation with a manufacturing facility and warehouse in Minnesota and a warehouse in New Jersey sufficient to provide nexus for taxation purposes. If *128 the corporation ships goods manufactured in Minnesota from its Minnesota warehouse to Nevada (a non-taxing jurisdiction), and the receipt from the sale is not taxable in Minnesota, the receipt would be thrown out of the denominator of the New Jersey sales fraction, even though New Jersey facilities and activities had no direct participation whatsoever in the transaction.
In another formulation of essentially the same argument, plaintiffs and the amici assert that the Throwout Rule is constitutionally flawed because it ignores the realities of the market under circumstances such as the following. If a multistate corporation with warehouse facilities in New Jersey generates $1000 of receipts from shipments of goods from its New Jersey warehouse to customers in New Jersey, $1000 of receipts from shipments to Pennsylvania, and $8000 of receipts from shipments to Nevada, under New Jersey’s destination test for the taxability of income as incorporated in N.J.S.A. 54:10A-6(B), the receipts generated by the Pennsylvania and Nevada (a non-taxing jurisdiction) sales would not be deemed New Jersey receipts and would not be included in the numerator of the sales fraction. The Director would consider the receipts from the Pennsylvania and Nevada sales as allocable to those states. If the Throwout Rule were not applied, the receipts allocable to New Jersey in the sales fraction would be one-tenth of the corporation’s total receipts ($1000/$10, 000). After application of the Throwout Rule to exclude the receipts from Nevada, however, the denominator of the sales fraction would be reduced to $2000. As a result, the corporation’s sales fraction would be increased five-fold from one-tenth to one-half. Plaintiffs describe this increase as resulting in taxation not fairly apportioned and not fairly related to services provided by New Jersey and, therefore, violative of the Due Process and Commerce Clauses.[5]
*129 Plaintiffs and the amici acknowledge the feasibility of circumstances in which the Throwout Rule would apply to a situation in which New Jersey activity is involved directly in a transaction, such as, for example, a transaction in which a Minnesota corporation accepted an order in that state for goods manufactured in New Jersey and shipped from New Jersey to a customer in Nevada. Plaintiffs contend, however, that the application of the Throwout Rule to such a transaction is purely the result of happenstance and not the result of a rational relationship between the income generated by the sale and values connected with New Jersey. Plaintiffs and the amici assert that the Throwout Rule, therefore, is facially unconstitutional even if, in one or more instances, the application of the Rule accidentally may satisfy the criteria for constitutionality under the Due Process Clause and Commerce Clause.
The Director responds to the Due Process and Commerce Clause arguments advanced by plaintiffs and the amici by asserting that this court should view the value provided to each plaintiff by New Jersey in a broad sense, and that, when so viewed, New Jersey’s contributions are sufficient to satisfy the Due Process Clause and Commerce Clause tests relating to fair apportionment and fair relationship to the services or “value” provided by this State. The Director relies on Allied-Signal, Inc. v. Director, Division of Taxation, 504 U.S. 768, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992), in support of this argument. There, the Supreme Court stated as follows:
We aro guided by the basic principle that the State’s power to tax an individual’s or corporation’s activities is justified by the “protection, opportunities and benefits” the Slate confers on those activities. *130 Because of the complications and uncertainties in allocating the income of multistate businesses to the several States, we permit States to tax a corporation on an apportionable share of the multistate business carried on in part in the taxing State. That is the unitary business principle.
[Id. at 778, 112 S.Ct. at 2258, 119 L.Ed.2d at 546 (citation omitted).]
See also Wisconsin v. J.C. Penney Co., 311 U.S. 435, 444, 61 S.Ct. 246, 249-50, 85 L.Ed. 267, 270 (1940) (“A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society”); Holmes Co. v. McNamara, 486 U.S. 24, 32, 108 S.Ct. 1619, 1624, 100 L.Ed.2d 21, 28 (1988) (holding, in a use tax context, that the Complete Auto requirement that a tax be “fairly related to the services provided by the State,” Complete Auto Transit, Inc. v. Brady, supra, 430 U.S. at 279, 97 S.Ct. at 1079, 51 L.Ed.2d at 331, is satisfied by a State’s providing fire and police protection, running mass transit, maintaining public roads, and supplying “a number of other civic services”).
The Director asserts that a corporation with sufficient activity in New Jersey to be subject to taxation here makes use of New Jersey’s roads and transportation system, enjoys the benefits of the employee base in the State, enjoys the use of the State’s banks and financial institutions, and receives the protections afforded by New Jersey’s laws and legal system. Thus, the Director argues, modification of New Jersey’s sales fraction, so as to exclude from the denominator receipts earned in foreign states, but not taxed in those states, does not necessarily increase a corporation’s tax burden to such an extent that the burden is not fairly apportioned or not rationally related to the values connected with New Jersey. The Director contends that application of the Throwout Rule, therefore, is externally consistent under Container Corporation. As to internal consistency, the Director notes that, if every state had a taxing system similar to New Jersey, no duplicate taxation would result. The Director does not address the internal consistency implications of the application of a Throwout Rule by multiple states with respect to income not taxable in those states under P.L. 86-272.
*131 The amici curiae have argued that, in addition to violating the Due Process and Commerce Clauses, the Throwout Rule violates the Supremacy Clause. Specifically, they contend that the Rule undercuts the application of P.L. 86-272 by, in effect, taxing income protected from taxation by that statute. The amici rely on Franklin Tower One, LLC v. N.M., 157 N.J. 602, 725 A.2d 1104 (1999), for the proposition that preemption by federal law may be found when a state law “stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” Id. at 616, 725 A.2d 1104 (citation omitted). The Director responds that the Throwout Rule does not conflict with P.L. 86-272 because the numerator of the sales fraction consists only of income properly attributable to New Jersey. The Director further asserts that the sales fraction in itself does not constitute the imposition of a tax but merely is a part of the calculation of what portion of a corporation’s total income will be taxed in New Jersey.
In support of her contention that any modification to the sales fraction resulting from application of the Throwout Rule does not constitute the imposition of a tax, the Director cites the recent decision of the New York Court of Appeals in In re Disney Enterprises Inc. v. Tax Appeals Tribunal, 10 N.Y.3d 392, 859 N.Y.S.2d 87, 888 N.E.2d 1029 (2008). Specifically, the Director refers to the following language appearing in this opinion: *132 In reaching this conclusion, the New York court discussed Shell Oil Co. v. Iowa Dep’t of Revenue, 488 U.S. 19, 109 S.Ct. 278, 102 L.Ed. 2d 186 (1988), where the Supreme Court held that “income ... included in the preapportionment tax base is not, by virtue of that inclusion, taxed by the State,” id. at 30, 109 S.Ct. at 284, 102 L.Ed.2d at 199, and that sales are “taxed directly by a State only when they are included in the numerator of the State’s sales fraction. Id. at 31,109 S.Ct. at 285,102 L.Ed.2d at 199.
*131 This Court has recognized the distinction between inclusion of non-taxable income in a formula used as a basis for imposition of tax and the tax itself (see Brady v. State of New York, 80 N.Y.2d 596, 592 N.Y.S.2d 955, 607 N.E.2d 1060 (1992) (“Lwjhen the State levies taxes within its authority, ‘property not itself taxable can be used as a measure of the tax imposed’ ” without amounting to a tax on the foreign property)).
The United States Supreme Court also has recognized the distinction (see Maxwell v. Bugbee, 250 U.S. 525, 535, 40 S.Ct. 2, 63 L.Ed. 1124 (1919) (tax was imposed only upon New Jersey property although apportionment formula considered ratio between non-resident’s in-state property and entire estate); Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U.S. 412, 425, 57 S.Ct. 772, 81 L.Ed. 1193 (1937) (state tax classification that considered “advantages and capacities” of company’s membership in larger multi-state chain “is not in legal effect the taxation of property or privileges possessed or enjoyed by the taxpayer beyond the borders of the state”)).
[Id., 10 N.Y.3d at 400-401, 859 N.Y.S.2d at 92-93, 888 N.E.2d 1029.]
*132 V. Analysis and Conclusions.
I conclude, that under the Due Process and Commerce Clauses, the Throwout Rule is constitutional on its face because, in at least some circumstances, it can operate in a manner that satisfies the requirements for constitutionality as set forth by the United States Supreme Court in the decisions discussed above. These circumstances include, but are not necessarily limited to, the following (the “Constitutional Circumstances”): (1) where the income being excluded from the denominator of the sales fraction is generated in whole or in part by activities in New Jersey, (2) where the application of the Throwout Rule has no material effect on the sales fraction because the income generated in the non-taxing state is insignificant in relation to the total income of the corporation, and (3) where the property and payroll fractions substantially temper the impact of the sales fraction on the allocation factor (even though the sales fraction is double-weighted under N.J.S.A. 54:10A-6). Under each of these circumstances the tax imposed by New Jersey, after application of the Throwout Rule, would be fairly related to services or values provided by this State and fairly apportioned.
I reject plaintiffs’ contention that, if every state had a rule similar to the Throwout Rule, multiple taxation, and, therefore, lack of internal consistency, would result when several states “threw out” receipts not taxable in foreign states under P.L. 86-272. As discussed in detail below, the Throwout Rule is not a tax. Consequently, the use of a throwout procedure in multiple states would not produce multiple taxation. Even if the throwout procedure were considered the equivalent of imposing a tax, whether *133 multiple taxation actually would result is unknowable without detailed information as to how and where every multistate corporation does business. Declaring the Throwout Rule unconstitutional “based on speculative concerns with multiple taxation” would be inappropriate, Moorman Mfg. Co. v. Bair, supra, 437 U.S. at 280, 98 S.Ct. at 2348, 57 L.Ed.2d at 209, particularly in the context of a facial constitutionality determination where the taxpayer bears the heavy burden of establishing that no set of circumstances exists in which the Throwout Rule could operate constitutionally.[6]
I turn now to the Constitutional Circumstances under the Due Process and Commerce Clauses.

Constitutional Circumstance No. 1

As discussed above, pursuant to the “destination rule” incorporated into N.J.S.A. 54:10A-6, income generated from sales in New Jersey of products shipped to foreign states or services performed in foreign states would not be taxable in New Jersey. Plaintiffs have acknowledged that New Jersey could, as a constitutional matter, elect to treat such income as taxable by this State. Indeed, in states having what is generally referred to as the “throwback rule,” such income from the sale of goods shipped out-of-state is taxed in the state of origin of the goods. Under this rule, where a sale of goods is made from one state to another state and the state to which the goods are delivered (the “destination state”) does not tax the income generated by the sale because of the applicability of P.L. 86-272, the state from which the goods were sold (the “origin state”) treats the income as allocable to that state and places the income in the numerator of the sales fraction *134 (referred to as the “receipts fraction” in some states). Thus, the income is “thrown back” to the origin state and taxed accordingly.
The throwback rule is based on the premise that the state of origin of a shipment of goods is justified in increasing' its apportionable share of a taxpayer’s income only if the state of destination lacks the constitutional power to subject the vendor to its income tax, but not if a destination state possesses such power and merely chooses not to exercise it. A destination state that is empowered to tax the interstate seller may impose other heavier taxes to compensate for its decision not to lax the income of the seller, or it may choose, as a matter of fiscal policy or business climate, not to tax such out-of-state sellers at all. However, if the destination state lacks the power to levy the tax because of limitations imposed by the U.S. Constitution or by congressional legislation, the attribution of the sale, for receipts factor purposes, to some state may be justified on the ground that failure to do so will result in “nowhere” income. Several courts have rejected challenges to the constitutionality of the throwback rule.
[Hellerstein & Hellerstein, supra, I State 'Taxation at § 9.18[l][b][i].]
The New Hampshire Supreme Court in Scott & Williams, Inc. v. Board of Taxation, 117 N.H. 189, 372 A.2d 1305 (1977), held that the throwback rule was constitutional where the destination state was precluded from imposing tax under the provisions of P.L. 86-272.
[I]f a state where products are delivered has not provided benefits sufficient to entitle it to tax any portion of the business’ income, then it is proper to attribute the production of income from those sales entirely to the state or stales which have provided “protection opportunities and benefits” to the business throughout the manufacturing process up to the point of shipment to the purchaser. Allocation of such sales to New Hampshire, the state of shipment, under the “throwback rule” therefore does not constitute taxation of extraterritorial values. Rather, it is an allocation of those sales to the state most entitled to levy a tax in return for the opportunities, protections and benefits which it has afforded the taxpayer.
[Id. at 1308-1309 (citation omitted).]
See also, Covington Fabrics Corp. v. South Carolina Tax Comm’n, 264 S.C. 59, 212 S.E.2d 574 (1975) (holding that a three-factor apportionment formula, which included a throwback rule in calculating the sales factor, satisfied federal constitutional requirements).
Based on the constitutionality of the throwback rule, New Jersey would have the right to include in the numerator of the sales fraction the receipts generated by a sale of goods from New Jersey to a foreign state precluded from taxing the income from the sale under P.L. 86-272, provided, of course, that the Due Process and Commerce Clause requirements discussed above are *135 satisfied. See Exxon Corp. v. Wisconsin Dep't of Revenue, 447 U.S. 207, 230, 100 S.Ct. 2109, 2123-24, 65 L.Ed.2d 66, 85 (1980) (stating that income of a unitary business “is subject to fair apportionment among all States to which there is a sufficient nexus with the interstate activities of the business”). Consequently, New Jersey may exclude the same receipt from the denominator of the sales fraction. The effect of such exclusion on a taxpayer’s obligations to New Jersey would be less significant than inclusion of the receipt in the sales fraction numerator. From a constitutional standpoint, however, the two procedures do not differ significantly.

Constitutional Circumstance No. 2

The Throwout Rule also could operate constitutionally if a corporation’s receipts from sales (whether or not involving New Jersey activity) to destination states that are precluded from imposing tax by P.L. 86-272, or that have the right to tax but elect not to do so, were minimal in relation to receipts from sales in New Jersey or sales to states that impose a tax “on or measured by profits or income, or business presence or business activity.” N.J.S.A. 54:10A-6(B). If, for example, a corporation located in New Jersey, with facilities in other states sufficient to subject the corporation to taxation in those states, had total receipts of $1000, of which $999 was from shipments of goods to customers in New Jersey or to states imposing tax, the sales fraction for that corporation, without application of the Throwout Rule, would be $999/$1000. If the Throwout Rule were applied to exclude from the denominator the $1 of receipts attributable to the non-taxing state, then the fraction would be $999/$999. The difference between two fractions (one-tenth of one percent) would be constitutionally insignificant. See Moorman Mfg. Co. v. Bair, supra, 437 U.S. at 278-80, 98 S.Ct. at 2347-48, 57 L.Ed.2d at 207-209 (recognizing that the Constitution permits some imprecision in the apportionment of income to a particular State).

Constitutional Circumstance No. 3

As explained above, the Throwout Rule applies only to the sales fraction component of New Jersey’s income allocation factor. *136 Thus, even though the sales fraction is double-weighted in the calculation of the allocation factor, a distortion in the sales fraction will not automatically translate into an unconstitutional distortion of the allocation factor. The constitutional significance of an increase in the sales factor resulting from application of the Throwout Rule cannot be measured based only on the sales fraction itself. The Due Process and Commerce Clauses require fair apportionment of a corporation’s income. Under the United States Supreme Court decisions discussed above, the constitutional concern relates to the ultimate apportionment of income and not to each component of the formula that produces the apportionment. See Trinova Corp. v. Michigan Dep’t of the Treasury, supra, 498 U.S. at 382-84, 111 S.Ct. at 833-35, 112 L.Ed.2d at 909-11 (rejecting the argument that a distortion of one factor of a three-factor apportionment formula was sufficient to render the formula unconstitutional and focusing on the fairness of the overall apportionment to determine constitutionality). As a result, (i) even if the sales fraction distorts the percentage of receipts properly allocable to New Jersey, the over-all allocation factor nevertheless may be fair and constitutional depending on the impact of the property and payroll fractions, and (ii) even if the application of the Throwout Rule results in a higher allocation factor than the factor that would result if the Throwout Rule were not applied, the allocation factor may remain constitutional. See New Jersey Natural Gas Co. v. Director, Div. of Taxation, 24 N.J.Tax 59 (2008) (discussing the degree of variance in an apportionment formula that will satisfy constitutional requirements). See also Moorman Mfg. Co. v. Bair, supra, 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (sustaining the constitutionality of the use of a one-factor apportionment formula that, for the years in issue, resulted in tax liabilities that were approximately 42% to 50% greater than the liabilities resulting from the use of a three-factor formula).
My conclusion that the Throwout Rule is facially constitutional under the Due Process and Commerce Clauses derives support from the provisions of N.J.S.A. 54:10A-8. This statute, entitled *137 “Adjustment of allocation factor,” provides in its entirety as follows:
If it shall appear to the [Director] that an allocation factor determined pursuant to IN.J.S.A. 54:10A-6j does not properly reflect the activity, business, receipts, capital, entire net worth or entire net income of a taxpayer reasonably attributable to the State, the [Director] may adjust it by:
(a) excluding one or more of the factors therein;
(b) including one or more other factors, such as expenses, purchases, contract values (minus subcontract values);
(c) excluding one or more assets in computing entire net worth; or
(cl) excluding1 one or more assets in computing an allocation percentage; or
(e) applying any other similar or different method calculated to effect a fair and proper allocation of the entire net income and the entire net worth reasonably attributable to the State.
INJ.S.A. 54:10A-8.|
In F.W. Woolworth Co. v. Director, Division of Taxation, 45 N.J. 466, 213 A.2d 1 (1965), our Supreme Court held that this statute not only provides the Director with the discretion to make an adjustment but also imposes an obligation to do so where the allocation of income to New Jersey under N.J.S.A. 54:10A-6 is unfair. The obligation exists whether the unfairness is of constitutional or non-constitutional dimensions. Id. at 497, 213 A.2d 1.
The significance to a facial constitutionality analysis of the Director’s discretion and obligations under N.J.S.A. 54:10A-8 is demonstrated in State Farm Mutual Automobile Insurance Co. v. State, 124 N.J. 32, 590 A.2d 191 (1991), where our Supreme Court considered the constitutionality of three statutory provisions included in a reform of the New Jersey automobile insurance statutes. Two of the provisions (Sections 75 and 78) precluded insurers from recovering, through rate increases, assessments and surcharges imposed by the State. A third section, (Section 2(g)), however, granted the Commissioner of Insurance the authority to guarantee insurers “a fair rate of return by some means other than direct passthrough.” Id. at 54, 590 A.2d 191. The Court concluded as follows:
Thus, the legislative history of the Reform Act suggests how the separate terms of Sections 75 and 78 and of Section 2(g) can be reconciled. That history supports the conclusion, fairly evident from the language of Sections 75 and 78, that passthroughs of surtaxes and assessments in the form of direct premium increases or direct rate relief are absolutely prohibited. However, the addition of Section 2(g) *138 to the original bill demonstrates the Legislature’s awareness and accommodation of the constitutional requirement that insurers must receive a fair rate of return. It is reasonable to conclude that the Legislature conferred on the Commissioner of Insurance the necessary implied authority to satisfy the constitutional standard that it expressly acknowledged in the statute.
[Id. at 45-46, 590 A.2d 191.]
As applied to the corporation business tax context, the State Farm analysis indicates that the Director’s obligation under N.J.S.A. 54:10A-8 to ensure that the allocation of income to New Jersey is fair under the Due Process and Commerce Clauses in itself provides a basis for sustaining the facial constitutionality of a statute that might, under certain circumstances, result in an unfair apportionment of income to this State. See Delmarva Power & Light Co. v. Director, Div. of Taxation, 23 N.J.Tax 188, 208-210 (2006) (holding that, if the allocation formula under N.J.S.A. 54:10A-6 produces a result that is unconstitutional under the Commerce Clause, then N.J.S.A 54:10A-8 operates as a “safety valve” permitting the Director to modify the formula so that it satisfies constitutional requirements).
I turn now to a discussion of the contention, advanced primarily by the amici curiae, that the Throwout Rule violates the Supremacy Clause because application of the Rule results in taxation of income not taxable under P.L. 86-272. I reject this contention for two reasons. First, the prohibitions of P.L. 86-272 do not immunize from all taxation income resulting from sales to foreign states in which the taxpayer corporation has a limited presence. Nothing in the statute bars an origin state (the state from which goods are sold) from taxing the income generated from sales of goods to foreign states that cannot tax the income, provided, of course, that the corporation has nexus with the origin state and the other Due Process and Commerce Clause requirements discussed above are satisfied.[7] Thus, to the extent New *139 Jersey’s relationship to and taxation of the income satisfies the requirements of the Due Process and Commerce Clauses, this State’s taxation of the income would be constitutional and unaffected by P.L. 86-272. Cf. Coors Porcelain Co. v. State, 183 Colo. 325, 517 P.2d 838 (1973), cert. denied, 419 U.S. 874, 95 S.Ct. 136, 42 L.Ed.2d 113 (1974) and Deseret Pharm. Co., Inc. v. State Tax Comm’n, 579 P.2d 1322 (Utah 1978) (both holding that P.L. 86-272 does not bar a state from taxing income earned by a domestic corporation from sales of goods to foreign states where taxation of the income by the foreign states was prohibited under P.L. 86-272).
My second reason for concluding that the Throwout Rule does not conflict with the policy concerns of P.L. 86-272 in violation of the Supremacy Clause is that the Throwout Rule affects only the denominator used in the calculation of the amount of receipts apportioned to New Jersey, and, therefore, the Rule does not, in itself, result in the imposition of a tax on the income of a multistate corporation. See Shell Oil Co. v. Iowa Dep’t of Revenue, supra, 488 U.S. at 30, 109 S.Ct. at 284, 102 L.Ed.2d at 199; In re Disney Enterprises Inc. v. Tax Appeals Tribunal, supra, 10 N.Y.3d at 402-403, 859 N.Y.S.2d at 93-95, 888 N.E.2d 1029. Even if the Throwout Rule were deemed to impose a tax because it reduces the denominator of the sales fraction and thereby increases the fraction, the Rule would not be facially unconstitutional under the Supremacy Clause because: (1) as discussed above with respect to Constitutional Circumstance No. 2, the effect of the Throwout Rule may be minimal; (2) as discussed above with *140 respect to Constitutional Circumstance No. 3, the sales fraction is only one component of New Jersey’s allocation factor and may not be the dominant component or even have a constitutionally significant impact on the allocation factor and the tax obligation determined through use of the allocation factor; and (3) as also discussed above, the Constitution allows a State some leeway in the use of an apportionment formula that may capture and tax some income properly sourced to another state. See Moorman Mfg. Co. v. Bair, supra, 437 U.S. at 272, 278-80, 98 S.Ct. at 2344, 2347-48, 57 L.Ed.2d at 204, 207-209. Consequent^, application of the Throwout Rule may result in no change, or only a de minimis change, in a corporation’s CBT liability. Thus, even if P.L. 86-272 were interpreted to protect, from taxation in New Jersey, income otherwise taxable in a destination state, the application of the Throwout Rule would not necessarily violate that protection.
I note that, even if I were to conclude that the Throwout Rule conflicts with P.L. 86-272, this conclusion would not require a determination of facial unconstitutionality under the Supremacy Clause. On its face, the Throwout Rule is applicable to situations in which P.L. 86-272 is not involved, namely, where a foreign state has jurisdiction to tax but elects not to do so. In those situations, the Rule would operate constitutionally under the Supremacy Clause. Even if the Rule operated unconstitutionally under a specific set of facts, the Director, as discussed above, could provide relief pursuant to N.J.S.A. 54:10A-8.
In summary, the Throwout Rule can satisfy the requirements of the Due Process, Commerce and Supremacy Clauses in some circumstances. As a result, the Rule is facially constitutional. The possibility that the Rule may operate unconstitutionally in some applications does not require a different conclusion as to facial constitutionality.
Plaintiffs’ motions for summary judgment are denied, and the Director’s motions for partial summary judgment are granted These rulings and this opinion are limited to the contentions by plaintiffs and the amici curiae that the Throwout Rule is facially unconstitutional. This opinion does not consider and is not intend *141 ed to address, in any fashion: (1) issues raised by each plaintiffs contention that the Throwout Rule is unconstitutional as applied to it; (2) issues raised by the contentions of plaintiffs Federated Brands, Inc. and Whirlpool, Inc. that they are not subject to taxation in New Jersey; or (8) any other issues raised by or arising out of each plaintiffs complaint. Separate proceedings for each plaintiff will be scheduled with respect to these issues.

 The filing date of the Pfizer Inc. appeal preceded the filing dates of the other appeals. In a case management conference, counsel for Plizer and the Director agreed that the issue of facial constitutionality should be addressed and resolved before the court entertained any proofs as to the issue of as-applied constitutionality. After Pfizer filed its motion for summary judgment on the facial constitutionality issue, plaintiff General Engines Company, Inc. applied to participate in that matter as an amicus curiae. I denied the application and ordered General Engines to file its own motion for summary judgment to be heard and decided simultaneously with the Pfizer motion. Plaintiffs Federated Brands, Inc. and Whirlpool Properties, Inc. liled independent motions for summary judgment. The Federated Brands matter was assigned to the Hon. Raymond A. Hayser and transferred to me solely for purposes of deciding the facial constitutionality issue. Participation by the amici curiae was permitted by my Order dated January 18, 2008.

 The term “apportionment'' generally is used to describe the process of determining the portion of the income of a multistate corporation that is taxable by a particular state. Because NJ.S.A. 54:10A-6 refers to an "allocation factor," I will use the terms “allocation” and "apportionment" interchangeably in this opinion.

 In MeadWestvaco Corp. v. Illinois Department of Revenue,-U.S.-,--, 128 S.Ct. 1498, 1506-1507, 170 L.Ed.2d 404, 413-415 (2008), the Supreme Court summarized the development of the "unitary business" concept that provides the basis for a state’s right to apportion and tax income of a multistate corporation.

 Most states employ a "destination” test for taxation of goods shipped out of state. See Jerome R. Hellerstein & Walter Hellerstein, I State Taxation, § 9.18[i] (3rd ed. 2007).

 The contentions by the plaintiffs and amici curiae under the Commerce Clause essentially are limited to criteria (2) and (4) of the Complete Auto formulation discussed above. These criteria are whether a tax is fairly apportioned and whether a tax is fairly related to services provided by the taxing state. Complete Auto Transit Inc. v. Brady, supra, 430 U.S. at 279, 97 S.Ct. at 1079, 51 L.Ed.2d at 331. Plaintiffs Pfizer and General Engines do not dispute that their *129 respective activities had a "substantial nexus" with New Jersey (Complete Auto criterion (1)), and plaintiffs Federated Brands and Whirlpool Properties do not challenge nexus for purposes of the summary judgment motions. Although plaintiffs have argued that the Throwout Rule discriminates against interstate commerce (Complete Auto criterion (3)) in that it affects corporate decisions about where to do business, plaintiffs provided no support whatsoever for this argument in the form of certifications or otherwise. Consequently, the argument does not warrant further discussion.

 Plaintiff Pfizer Inc. also argues that the internal consistency test is meaningless in the context of an analysis of the Throwout Rule and, therefore, cannot apply. The language quoted above from Container Corp. v. Franchise Tax Board, supra, 463 U.S. at 169, 103 S.Ct. at 2942, 77 L.Ed.2d at 556, does not contemplate exceptions to the applicability of the test. Even if Pfizer is correct, the net result of its argument is the elimination of a test the Throwout Rule must satisfy in order to withstand a constitutional attack.

 The history of P.L. 86-272 suggests a limited scope and purpose. As discussed in Heublein, Inc. v. South Carolina Tax Commission, 409 U.S. 275, 279-81 93 S.Ct. 483, 486-88, 34 L.Ed.2d 472, 477-78 (1972), the statute was enacted as a temporary measure in response to concerns raised by the business community after the Supreme Court’s decision in Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959). In *139 this decision, the Court permitted a State to tax a portion of the income of a muitistate corporation having a sufficient nexus with the State. The business community's concerns related to (i) uncertainty as to what constituted sufficient nexus to subject a corporation to taxation, (ii) the costs of taxation, (iii) the record keeping requirements resulting from multistate taxation, and (iv) the necessity to hire attorneys and accountants in each state where a corporation was subject to taxation. In enacting, P.L. 86-272, Congress's “primary goal” was to provide a temporary solution to "the most pressing pioblems created by Northwestern States Portland Cement Co.,“ with a permanent solution to follow after "careful study.” Heublem, Inc., supra, 409 U.S. at 280-81, 93 S.Ct. at 487-88, 34 L.Ed.2d at 477-78.